IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AL COHEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-2484 |
| | § | |
| ALLSTATE INSURANCE COMPANY, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is a flood insurance case involving an Allstate Insurance Company "Write Your Own" Standard Flood Insurance Policy issued to Al Cohen. After Cohen's home was damaged by a flood in April 2016, he sued Allstate and Rachael Ray, the Allstate insurance agent who sold him the Policy. Cohen alleges that Allstate underpaid and wrongfully denied his claim for damages to his personal property. He also alleges that he purchased the Policy based on Ray's assurances that the Policy covered his detached garage apartment. It did not. Cohen asserts causes of action for: (1) breach of contract; (2) misrepresenting an insurance policy by making an untrue statement of material fact under § 541.061 of the Texas Insurance Code; (3) fraud, fraudulent misrepresentation, and negligent misrepresentation; and (4) violations of the Texas Deceptive Trade Practices Act, TEX. BUS. & COMM. CODE § 17.41.

Allstate and Ray moved for summary judgment, Cohen responded, Allstate replied, and Cohen surreplied. (Docket Entries No. 17, 18, 20, 21, 22). The court held a hearing at which counsel for the parties presented oral argument on the motions.

Based on the filings, arguments, and the applicable law, Allstate's and Ray's motions for

1

summary judgment, (Docket Entries No. 17, 18), are granted. Cohen's breach-of-contract claim is barred by the Policy's one-year statute of limitations. Although Cohen's state-law claims are not preempted by federal law because they are policy-procurement claims, they nonetheless fail as a matter of law. *Spong v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 787 F.3d 296, 306 (5th Cir. 2015). Cohen's claims are dismissed, with prejudice, and final judgment is separately entered.

The reasons for these rulings are explained below.

**I.      Background**

The summary judgment record consists of the exhibits attached to Allstate's summary judgment motion, Cohen's response, and Allstate's reply:

- Affidavits of Jason Raske, Allstate's corporate representative, (Docket Entry No. 17, Ex. A), John Kubala, Cohen's public insurance adjuster, (Docket Entry No. 20, Ex. 3), and Cohen, (*Id.* Ex. 4);

- The Policy declaration setting out the coverage limits, (Docket Entry No. 17, Ex. B);

- FEMA's Standard Flood Insurance Policy, and the Arrangement between FEMA and the Write Your Own carriers, (*Id.* Exs. C–D);

- A screenshot of Cohen's first notice of loss, a letter confirming that the claim was assigned to an adjuster, a signed public-insurance-adjuster contract between Cohen and Kubala, and a letter from Allstate confirming receipt of the contract, (*Id.* Exs. E–H);

- A letter dated June 2, 2016 from Allstate to Cohen and Kubala stating that Allstate had sent proof-of-loss documents, (*Id.* Ex. I);

- A copy of Cohen's own, different, proof-of-loss form, dated June 3, 2016, (*Id.* Ex. J);

- A letter from Allstate to Cohen, dated June 9, 2016, denying Cohen's proof of loss, (*Id.* Ex. K; Docket Entry No. 20, Ex. 1);

- A letter from Allstate to Cohen, dated July 19, 2016, closing parts of Cohen's claim, (*Id.* Ex. L; Docket Entry No. 20, Ex. 2);

- Cohen's signed and executed proof-of-loss form, dated July 19, 2016 and a confirmation of payment dated July 21, 2016, (*Id.* Exs. M–O);

- A letter from Allstate to Cohen, dated August 29, 2016, denying Cohen's personal-property claim, (*Id.* Ex. P);

- A signed nonwaiver agreement between Cohen and Allstate dated October 17, 2016, (*Id.* Ex. Q);

- A partial proof-of-loss form, (*Id.* Ex. R);

- A letter from Allstate to Kubala, dated November 22, 2016, placing Cohen's claim on inactive status because Allstate had not received the executed partial proof-of-loss form, (*Id.* Ex. S);

- The signed partial proof of loss, dated November 22, 2016, (*Id.* Ex. T);

- A confirmation of payment to Cohen, dated December 2, 2016, (*Id.* Ex. U);

- A letter from Allstate to Cohen, dated December 3, 2016, confirming payment of Cohen's building-damage and personal-property claims, (*Id.* Ex. V);

- A screenshot of a summary of Cohen's claim history, (Docket Entry No. 21, Ex. X);

- FEMA Bulletin W-16039, (Docket Entry No. 20, Ex. 5); and

- FEMA Bulletin W-17013a, (*Id.* Ex. 7).

The summary judgment record discloses the following facts, most undisputed. In 2015, Cohen spoke with Ray several times about obtaining flood insurance for his home. Cohen explained that he had a detached garage apartment that he wanted to cover along with the house. Cohen alleges and states in his affidavit that on at least two occasions, Ray assured Cohen that he did not need separate flood insurance policies for his home and for his garage apartment. Cohen relied on Ray's assurances and purchased a single policy for his home and for his garage apartment. The coverage limits were $150,000 for building damage and $60,000 for damage to contents.

On April 18, 2016, a flood damaged Cohen's home and garage apartment and the contents of each. After the flood, Cohen learned that the Policy did not cover the damage to the garage apartment or its contents. Cohen timely notified Allstate of the loss and filed an insurance claim.

3

Cohen has two claims, one for building damage and the other for personal-property damage. After reviewing an independent adjuster's report, Allstate concluded that the building damage policy amount was $55,506.28. On May 27, 2016, Allstate sent Cohen and Kubala a proof-of-loss form for that amount, instructing Cohen to return the form so Allstate could process the flood-loss payment.

On June 3, 2016, Cohen submitted his own, different, proof of loss, claiming $93,871.67 in damages, but without documents supporting the amount. On June 9, Allstate sent Cohen and Kubala a letter denying Cohen's unsupported proof of loss for the claim. Cohen and Kubala allege that they never received this letter.

On July 19, 2016, Cohen executed the May 27 proof-of-loss form claiming $55,506 for building damage to the main residence. On July 21, Allstate issued Cohen a $55,506.28 payment for that claim. On July 19, 2016, Allstate mailed Cohen a letter closing his personal-property claim "until such time as we receive further supporting documentation." (Docket Entry No. 20, Ex. 2). The July 19 letter also denied coverage for "various items . . . pending documentation of replacement from [a] prior flood loss," and for "damage to your client's second residence [the detached garage apartment]." (*Id.*).

After Allstate sent the July 19 letter, it continued to investigate Cohen's personal-property claim. Because Cohen had not provided the necessary supporting documents for the claim, Allstate sent Cohen another letter on August 29, with language nearly identical to the July 19 letter, closing the personal-property claim "until such time as we receive further supporting documentation." (Docket Entry No. 17, Ex. P).

Allstate continued to investigate the personal-property claim after August 29, including sending an independent adjuster to evaluate the damage. The adjuster concluded that the covered

4

personal-property damage totaled $3,852.13. Because this investigation was more than 120 days after the flood, Allstate sent Cohen a nonwaiver agreement "to protect the rights of all parties as we continue our investigation of this claim." (*Id.* Ex. Q). On October 17, Cohen executed the nonwaiver agreement. Allstate sent Cohen a proof-of-loss form for the $3,852.13 personal-property claim. On November 22, Cohen executed and returned the proof-of-loss form, and on December 2, Allstate issued a $3,852.13 payment.

Cohen filed this suit on August 15, 2017, eight months after Allstate issued payment on the personal-property claim in December 2016, and 13 months after the July 19 letter. After discovery, Allstate moved for summary judgment, arguing that limitations bars Cohen's breach-of-contract claim and that federal law preempts his state-law claims. (Docket Entry No. 17). Ray adopted Allstate's motion. (Docket Entry No. 18). Cohen responds that his federal claim is not time-barred because the two letters Allstate sent to Cohen were not coverage denials, but proof-of-loss denials, and that his state-law claims are not preempted because they are based on policy-procurement, not claims-handling. (Docket Entry No. 20). Both issues are addressed below.

## II. The Legal Standards

### A. Summary Judgment

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing an absence of evidence to support the nonmoving party's case. *Fret v. Melton Truck Lines, Inc.*, 706 F. App'x 824, 827–28 (5th Cir. 2017). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (citing *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). A fact is material if "its resolution could affect the outcome of the actions." *Aly v. City of Lake Jackson*, 605 F. App'x 260, 262 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Exploration, LLC v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Bailey v. E. Baton Rouge Parish Prison*, 663 F. App'x 328, 331 (5th Cir. 2016) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 317 (5th Cir. 2016) (quoting Boudreaux, 402 F.3d 536, 540 (5th Cir. 2005)). In deciding a summary judgment motion, the court draws all reasonable

inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 866 F.3d 698, 702 (5th Cir. 2017).

### B. The National Flood Insurance Act

Federal law governs National Flood Insurance Program policies and eligibility for federal flood insurance. *Spong v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 787 F.3d 296, 299 (5th Cir. 2015). Private insurance companies—Write Your Own carriers—like Allstate, act as intermediaries for the federal government. The statutory and regulatory framework is as follows:

> By enacting the National Flood Insurance Act of 1968, 42 U.S.C. § 4001 *et seq.*, Congress established the Program to make flood insurance available on reasonable terms and to reduce fiscal pressure on federal flood relief efforts. FEMA administers the Program. Within the Program, the WYO program allows private insurers to issue flood insurance policies in their own names. Under this framework, the federal government underwrites the policies and private WYO carriers perform significant administrative functions including "arrang[ing] for the adjustment, settlement, payment and defense of all claims arising from the policies." WYO carriers must issue policies containing the exact terms and conditions of the SFIP set forth in FEMA regulations. Additionally, FEMA regulations govern the methods by which WYO carriers adjust and pay claims. Although WYO carriers play a large role, the government ultimately pays a WYO carrier's claims. When claimants sue their WYO carriers for payment of a claim, carriers bear the defense costs, which are considered "part of the . . . claim expense allowance"; FEMA reimburses these costs. Yet, if "litigation is grounded in actions by the [WYO] Company that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence," then such costs will not be reimbursable to the WYO carrier.

*Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009) (citations omitted).

### III. Analysis

#### A. The Breach-of-Contract Claim

Whether limitations bars Cohen's breach-of-contract claim turns on whether the letters are proof-of-loss denials, as he asserts, or are claim denials, as Allstate asserts.

Denials of claims and denials of proof of loss are different. A proof of loss is the claimant's signed and sworn estimate of additional covered damage. 44 C.F.R. Part 61, Appendix A(1). Under

7

the Policy's "Loss Payment" provision, if the carrier rejects a claimant's proof of loss in whole or in part, the claimant has three options: (1) accept the denial of the claim; (2) exercise the policy rights; or (3) file an amended proof of loss, as long as it is filed within the deadline, here, 120 days after the loss, based on FEMA Bulletin W-16039. *Id.* A carrier's rejection of a proof of loss is not necessarily a denial of the claim that largely depends on which of the three options a policyholder selects. The policyholder "need not accept the rejection as a denial of the claim." *Migliaro v. Fidelity Nat'l Ins. Co.*, 880 F.3d 660, 665 (3d Cir. 2018) ("At the outset, we reject Fidelity's argument that the rejection of loss is *per se* a denial of the claim.").

Whether a denial of proof of loss constitutes a denial of a claim depends on the claimant's conduct. In *Migliaro*, the Third Circuit considered a letter stating that the proof of loss could not be accepted; that "[t]his is not a denial of your claim"; and instructed the claimant to "forward documentation [of additional covered damages] and they will be considered on a supplemental basis. . . ." *Id.* at 664. Despite the letter's language stating that it was not a denial of the claim, the court held that "the written rejection of a proof of loss constitutes a denial of the claim if, based on it, the policyholder files suit against the WYO carrier, thereby accepting the written rejection of proof of loss as a written denial of his claim." *Id.* at 665. Because the claimant failed to seek an appraisal, file an amended proof of loss, or submit additional documentation, the claimant's position that the denial of the proof of loss was not a denial of his claim was "undercut by his own conduct—he brought suit because his claim was denied." *Id.* at 668. The court held that "[g]iven the language of the SFIP's Loss Payment provision and the restrictions placed on a policyholder's private right of action against a WYO carrier, we conclude that the written rejection of a proof of loss constitutes a denial of the claim, if, based on it, the policyholder files suit against the WYO carrier, thereby accepting the written rejection of a proof of loss as a written denial of the claim."

8

*Id.* at 664–65.

The court noted that neither the Third Circuit nor any other federal court other federal court has decided what defines a written claim denial, as opposed to a denial of a proof of loss. *Id.* at 664. "Both parties cite a number of cases in which courts have considered, on a case-by-case basis, whether a particular writing constituted a written denial of a claim. . . . Nor are we aware of any case in which the court has categorically determined whether a written rejection of a proof of loss constitutes a 'written denial of all or part of the claim.'" *Id.* n.7.

Allstate argues that Cohen's breach-of-contract claim is time-barred under the Policy provision stating that "[i]f you do sue, you must start the suit within 1 year after the date of the written denial of all or part of the claim . . . . this requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy." (Docket Entry No. 17, Ex C). The provision tracks the statute governing the National Flood Insurance Program, stating that "the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Administrator, may institute an action against the Administrator on such claim . . . ." 42 U.S.C. § 4072. Allstate alleges that it denied all or part of Cohen's claim in the June 9, 2016 and July 19, 2016 letters. (*Id.* Exs. A, K, L). Cohen filed this suit on August 14, 2017, more than a year after the second letter was sent.

If either the June 9 letter or the July 19 letter constitutes a written denial of all or part of the claim, the statute of limitations bars Cohen's breach-of-contract claim.

    **i.**    **The June 9, 2016 Letter**

The June 9 letter states: "Please be advised that we must deny the Proof of Loss you submitted in the amount of $93,871.67 due to failure to produce supporting documents. . . . If you do not agree with our decision to deny your claim, in whole or in part, Federal law allows you to

9

appeal that decision within 60 days of this denial letter." (Docket Entry No. 20, Ex. 1). Allstate argues that the letter is a denial of the proof of loss and a denial of the claim; Cohen argues that it only denies the proof of loss.

Cohen also alleges that neither he nor Kubala ever received the June 9 letter. (*Id.* Ex. 3). Cohen also contends that because he filed another proof of loss on July 20, 2016, within the extended period for filing a proof of loss under FEMA Bulletin W-16039, the June 9 letter cannot be a written denial. That bulletin states: "[t]o ensure that NFIP policyholders have sufficient time to finalize their claims, I hereby authorize an additional 60-day extension of the time period within which a policyholder must submit the requisite signed and sworn-to proof of loss with their NFIP insurer." (*Id.* Ex. 5).

Cohen's first argument is that he never received the letter, so it is ineffective to constitute a written denial of coverage. The problem is that the statute says that the claimant must file suit "within one year after the *date of mailing* of notice of disallowance or partial disallowance." 42 U.S.C. § 4072. Even though Cohen's and Kubala's affidavits state that neither received the June 9 letter, Allstate included an affidavit stating that it sent the letter to both Cohen and Kubala on June 9. Even if Cohen's and Kubala's statements that they never received the letters are true, the critical fact is mailing, not receipt.

Cohen's second argument—that the June 9 denial of proof of loss is not a written denial of all or part of his claim—is resolved by his own conduct. Unlike the claimant in *Migliaro*, who did not provide the necessary documents or otherwise attempt to submit a second proof of loss after his first submission was rejected, Cohen signed and executed a different proof of loss on July 19. That was about a month after Allstate rejected his first proof of loss on June 9. When Cohen's first proof of loss was rejected on June 9, he had three options under the Policy: (1) accept the denial of the

10

proof of loss as a denial of the claim; (2) exercise his rights under the Policy; or (3) file an amended proof of loss. Cohen took option 3. By submitting another proof of loss, he chose to "not accept the rejection as a denial of his claim." *Migliaro*, 880 F.3d at 665.

Based on Cohen's conduct, the June 9 letter is not a written denial of all or part of his claim.

### i.  The July 19, 2016 Letter

The July 19 letter states:

> Please be advised that we must respectfully close the personal property portion of your client's claim without payment until such time as we receive further supporting documentation. . . . Upon receipt of the requested documentation, we will re-open the personal property portion of your claim.
>
> Next, we must respectfully deny coverage for various items that you are claiming pending documentation of replacement from your client's prior flood loss. . . .
>
> . . .
>
> Finally, we must respectfully deny coverage for the damage to your client's second residence you are claiming [the detached garage apartment].
>
> . . .
>
> If you do not agree with our decision to deny your claim, in whole or in part, Federal law allows you to appeal that decision within 60 days of this denial letter.

(Docket Entry No. 17, Ex. L).

Allstate argues that the July 19 letter is a denial of Cohen's personal-property claim. Here, Allstate's conduct provides the basis to resolve the issue. After Allstate sent that letter, it continued to investigate the claim. It sent another denial letter on August 29. Even after sending the August 29 letter, Allstate continued to investigate the claim, concluding in October 2016 that the payable amount totaled $3,852.13, and Allstate sent Cohen a proof-of-loss form for that amount, which Cohen executed. Allstate sent Cohen $3,852.13 in December 2016.

Allstate argues that the July 19 letter denied of all or part of Cohen's claim. In response,

11

Cohen argues that the letter does not comply with the mandatory elements of a denial letter set out by FEMA in Bulletin W-17013a, which provides:

> In order to accomplish the goal of improving the policyholder experience at the time of denial, the WYO Companies and NFIP Direct **must include** the following elements in all denial letters:
>
> - **The date of the denial letter. . . .**
> - **The name(s) of the policyholder(s), the mailing address, and the loss location. . . .**
> - **The date of loss. . . .**
> - **The date(s) the policyholder submitted a request for payment (e.g., advance payment, proof of loss) or failed to comply with a material term of the SFIP (e.g., failed to submit a timely proof of loss).** Subsequently, a denial letter should be issued only after the policyholder submits a signed and sworn proof of loss, signs the final adjuster's report, or fails to comply with a material term of the SFIP
> - **The item(s) denied with the corresponding dollar amount denied, whenever applicable.** Denial letters should avoid general terms such as "various items" or "finished items in a basement," and instead list the items not covered by the SFIP.
> - **A plain-language explanation for the non-payment or non-coverage.** Rather than quote the SFIP at length, the denial letter should explain why the SFIP does not provide coverage. . . .
> - **Citations to the relevant sections of the SFIP and a web link to the SFIP.** This should complement the plain-language explanation, not replace it.

FEMA Bulletin W-17013a (Oct. 16, 2017).

Cohen argues that the July 19 letter lacks elements four, five, and six. The letter uses the term "various items" without specifically listing them; it does not include the date the Cohen requested payment or failed to comply with a material term of the Policy; and it does not provide a plain-language explanation for the non-payment, but instead quotes the Policy. Although Cohen is correct that the July 19 letter lacks these elements, Bulletin W-17013a was issued on October 16, 2017, long after the letter was sent. Even though the letter lacks elements required by that Bulletin, the requirements did not apply to denial letters sent before the Bulletin.

Cohen also argues that the letter does not constitute a denial of all or part of a claim because:

12

(1) the first part of the letter only temporarily closed the claim until additional documentation was provided; (2) the second part of the letter, "deny[ing] coverage for various items . . . pending documentation of replacement from your client's prior flood loss," is too vague to deny coverage because of the term "various items"; and (3) the third part of the letter, which denied coverage for the detached garage, is not a denial because that claim was not part of the personal-property claim, and rather, part of the $55,506.28 building-damage claim, which had already been paid.

Even though Cohen is correct about the first and third parts of the letter, the second part, stating that "we must respectfully deny coverage for various items that you are claiming pending documentation of replacement from your client's prior flood loss explicitly denies coverage for the personal-property claim," is an express denial of all or part of the claim. The letter also states "[i]f you do not agree with our decision to deny your claim, in whole or in part, Federal law allows you to appeal that decision within 60 days of this denial letter." (Docket Entry No. 17, Ex. 2).

Allowing the July 19 letter to bar Cohen's claims seems inequitable because the personal-property claim was reopened and paid. Although the July 19 letter denied the claim, Allstate continued to investigate, paying Cohen $3,852.13 in December. Unfortunately for Cohen, there is no legal basis to support a ruling that the July 19 letter is not a denial of all or part of the claim. *See Migliaro*, 880 F.3d at 667 ("For the same reasons we must narrowly construe the *type* of suit a policyholder may bring against a WYO carrier, we must also narrowly construe *when* a policyholder may bring suit.").

Because the July 19 letter constitutes a written denial of all or part of Cohen's claim, his breach-of-contract claim is barred by the statute of limitations.

### B.     Preemption of State-Law Claims

Cohen asserts claims for fraud, fraudulent misrepresentation, negligent misrepresentation,

13

and violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act, arising from Cohen's reliance on Ray's alleged misrepresentations about the scope of the Policy's coverage. Allstate moved for summary judgment that these claims are preempted by federal law. In response, Cohen argues that his claims are not preempted because Ray's misrepresentations were about policy-procurement, not claims-handling.

The Fifth Circuit distinguishes between state-law claims about claims-handling and those about policy-procurement. In *Wright v. Allstate Insurance Co.*, 415 F.3d 384, 389–90 (5th Cir. 2005), the court held that the National Flood Insurance Act preempted the plaintiff's claims for fraud, negligent misrepresentation, and violations of the Texas Insurance Code and the Texas Deceptive Trade Practices Act. Although an earlier decision, *Spence v. Omaha Indemnity Insurance Co.*, 996 F.2d 793, (5th Cir. 1993), had been interpreted as holding that "state law claims based on procurement were not preempted, while state law claims based on claims adjustment were," a "careful reading of *Spence*, however, reveals that *Spence* does not hold that the state law tort claims are not preempted by the NFIA. . . . Thus, the issue of whether the NFIA preempted state law tort claims was not before the court in *Spence*, and the court did not address it. In this case, by contrast, the question of whether federal law preempts state law tort claims based on a WYO's handling of an insurance claim is squarely before the court. . . . We join these circuits in holding that state law tort claims arising from claims handling by a WYO are preempted by federal law." *Wright*, 415 F.3d at 389–90. The court held only that tort claims about claims-handling were preempted by federal law; it did not address whether policy-procurement claims were also preempted.

After *Wright*, the Fifth Circuit held that procurement-related state-law tort suits, unlike claims-handling suits, were not preempted by federal law. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 757–58 (5th Cir. 2009). The court explained that Congress expressly preempted only claims-

14

handling suits, yet in the instance of policy-procurement suits, "it chose to confine the plain language of its preemption to handling." *Id.* Additionally, unlike in claims-handling cases, "permitting prosecution of procurement-related state-law tort suits does not impede the full purposes and objectives of Congress." *Id.* at 758. The court concluded that federal law did not preclude the plaintiff "from pursuing his procurement-based suit that asserts a state-law cause of action for Allstate's allegedly negligent misrepresentations." *Id.*

in July 2009, shortly after *Campo*, FEMA issued a bulletin "that cited and disagreed with *Campo*, stating that 'FEMA previously understood and intended its regulations to preempt state law claims related to policy formation, renewal, and administration arising from allegations of WYO Company error as distinct from agency error'" and that "preemption should apply to the nationally uniform and FEMA-mandated processes governing policy issuance." *Spong v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 787 F.3d 296, 302–03 (5th Cir. 2015) (quoting FEMA Bulletin W-09038 (July 19, 2009)).

In *Spong*, the Fifth Circuit considered an interlocutory appeal to decide whether *Campo* "should be reversed or has been superseded by FEMA's pronouncement and whether all NFIP policy procurement disputes are preempted by federal law." *Id.* at 303. The court affirmed its holding in *Campo*:

> Applying *Campo*, as we must, we hold that federal law does not preempt the Spongs' policy-procurement claims. While the NFIA preempts claims-handling causes of action and claims, it does not preempt procurement claims. . . . Here, the Spongs were not already covered by flood insurance at the time the policy issued on March 16, 2006; they were in the position of "potential future policyholder[s]." Accordingly, federal law does not preempt their state tort-law claims to the extent they implicate Fidelity's acts or omissions regarding issuance of the policy because those claims are procurement-based, not claims-handling-based.

*Id.* at 306. Upholding the distinction between claims-handling and policy-procurement suits, the court held that the procurement claims were not preempted. The court remanded the nonpreempted

state-law claims to the lower court.

The court also explained that "even though not preempted, certain claims cannot succeed as a matter of law." *Id.* at 299. Under *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380 (1947) and *Heckler v. Community Health Services of Crawford County*, 467 U.S. 51 (1984), the plaintiffs could not "claim ignorance of the statutes and regulations as an excuse for relying on [the insurance company's] issuance of a policy as a determination or representation that their property was not located in the" Coastal Barrier Resources System, an area where property is uninsurable under the National Flood Insurance Program. *Id.* at 309. Because the terms of the Standard Flood Insurance Policy "were contained, word for word, in the Code of Federal Regulations," the plaintiffs "had constructive, if not actual, knowledge that the policy [the company] issued did not cover property within [the uninsurable area]." Because the plaintiffs sought coverage provided by public funds, "[i]t was incumbent upon [them] to determine whether their property was eligible for a SFIP." *Id.*

On remand, the lower court granted summary judgment for the insurance company and dismissed the plaintiffs' state-law claims based on the constructive knowledge attributable to the plaintiffs as participants in the National Flood Insurance Program. On appeal for the second time, the Fifth Circuit affirmed the dismissal, holding that the lower court's "determinations are consistent with the rationale of *Merrill* and *Heckler* and guided by our prior decisions in *Spong* and *Lobeck*." *Spong v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 701 F. App'x 316, 321 (5th Cir. 2017). "Though the Spongs circumstances are unfortunate, '[t]he principles unique to governmental insurance policies that require a strict construction of their terms and requirements can sometimes create ostensibly inequitable results.'" *Id.* (quoting *Jacobson v. Metro Prop. & Cas. Ins. Co.*, 672 F.3d 171, 176 (2d Cir. 2012)).

Although Cohen is correct that his state-law claims are not preempted by federal law because

16

they are policy-procurement claims, they are nonetheless foreclosed by established precedent. The Fifth Circuit has held that under *Merrill* and *Heckler*, plaintiffs suing under the National Flood Insurance Program cannot "claim ignorance of the statutes and regulations as an excuse" for relying on Write Your Own carriers' agents' representations. *Spong*, 787 F.3d at 309. Because the Write Your Own carriers are representatives of the government, and because the applicable policy terms are set out in the Code of Federal Regulations, plaintiffs are charged with "constructive, if not actual, knowledge" of the policy terms. *Id.* "As the Supreme Court has previously stated, 'those who deal with the Government are expected to know the law and may not rely on the conduct of government agents contrary to the law.'" *Lobeck v. Licatino*, 678 F. App'x 258, 260 (5th Cir. 2017) (quoting *Heckler*, 467 U.S. at 63).

At the oral argument hearing, Cohen argued that this case is distinguishable from *Spong* because the property in *Spong* was never insurable, based on its location. The property at issue here, the detached garage apartment, was insurable, but only under a separate policy. That distinction does not account for the fact that Cohen is charged with constructive knowledge of the regulations setting out the policy terms. Those terms state that the Policy does not cover damage to a detached garage apartment. (Docket Entry No. 17, Ex. C; Docket Entry No. 1 ¶ 17). Cohen's state-law claims fail as a matter of law, despite the misrepresentations he alleges, because Cohen had constructive knowledge that the Policy did not cover the garage apartment. *See Lobeck*, 701 F. App'x at 320 ("Lobeck contends that she reasonably relied on Fidelity and GIA's misrepresentations that her property was insurable. . . . Lobeck was charged with constructive knowledge that her property is located in the [uninsurable area], and so her argument fails."); *Spong*, 701 F. App'x at 321 ("Given the Spongs' imputed knowledge, Fidelity correctly argues that the [Texas Deceptive Trade Practices Act] unconscionability claim was properly dismissed.").

Although Cohen's state-law claims are not preempted by federal law, they nonetheless fail as a matter of law under *Merrill*, *Heckler*, and *Spong*.

## IV. Conclusion

Allstate's and Ray's motions for summary judgment, (Docket Entries No. 17, 18), are granted. The claims are dismissed, with prejudice, without leave to amend, because amendment would be futile.

SIGNED on March 2, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge